UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 10 B 28986 |
| | ) | |
| ROBERT ALLEN DURCHSLAG, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| LUIS GALVAN, as Trustee of the 2007 | ) | |
| Amendment and Restatement of Trust | ) | |
| Agreement Establishing the Irving P. | ) | |
| Durchslag Revocable Trust, Executor of | ) | |
| the Estate of Irving P. Durchslag, and | ) | |
| Trustee of the Marjorie Sabbath Durchslag | ) | |
| Revocable Trust, | ) | |
| | ) | Adversary Case No. 10 A 1524 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ROBERT ALLEN DURCHSLAG, | ) | |
| DEBRA A. DURCHSLAG, DONALD | ) | |
| DURCHSLAG, TOM SANSONE, | ) | |
| not individually but as Agent of the | ) | |
| INTERNAL REVENUE SERVICE OF | ) | |
| THE UNITED STATES TREASURY, | ) | |
| and MICHAEL CANULLI, | ) | Honorable Susan Pierson Sonderby |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

This matter comes before the court on the motion of defendant-lien holder Michael

Canulli ("Canulli") to dismiss the First Amended Adversary Complaint for Interpleader (the

"amended complaint") of plaintiff Luis Galvan ("Galvan"), in his capacity as trustee of the

revocable trusts of Irving P. Durchslag ("Irving") and Marjorie Sabbath Durchslag ("Marjorie")

and as executor of Irving's estate, for lack of subject matter jurisdiction pursuant to Federal Rule

of Civil Procedure 12(b)(1), made applicable by Federal Rule of Bankruptcy Procedure 7012(b),

or, in the alternative, to abstain from deciding the case. For the reasons set forth below, the

motion to dismiss is granted.

## I. FACTS AND BACKGROUND

In deciding a motion to dismiss under Rule 12(b)(1), the court must accept as true all

well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of

the plaintiff. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993). When issues are

jurisdictional, Rule 12(b)(1) gives the court authority to consider evidence beyond the pleadings

as well. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *Berg

v. eHome Credit Corp.*, No. 08 C 05530, 2011 WL 761486, at *1 (N.D. Ill. Feb. 25, 2011); *Baker

Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 640 n.2 (Bankr. N.D. Ill. 2004). All of the

evidence needed to decide the motion in this matter, however, can be gleaned from the amended

complaint and the exhibits attached thereto.

On October 21, 1981, Irving executed a declaration of trust creating the Irving P.

Durchslag Revocable Trust. (*See* Compl. ¶ 21 & Ex. B, p. 6.) Thereafter, on December 30,

1992, Marjorie executed a declaration of trust, under which she established the Marjorie Sabbath

Durchslag Revocable Trust. (*Id.* ¶ 14 & Ex. B.) Marjorie died on September 16, 1995. (*Id.* ¶

20.) According to the terms of her trust, the residuary trust terminated at the time of Irving's

death (or upon her death if Irving died before she did), and the balance of the principal and any

2

income was to be distributed to the "then acting trustee to be administered under the provisions of the declaration" creating Irving's trust. (*See id.* ¶ 21 & Ex. B, p. 6.) On March 8, 2007, Irving amended his trust agreement. (*Id.* ¶ 13.) Under the revocable trust created thereunder, his children, Robert Allen Durchslag (the "Debtor"), Debra A. Durchslag ("Debra"), and Donald Durchslag ("Donald"), were the beneficiaries. (*Id.* ¶¶ 2-4, 13, 17-19, 23 & Ex. A.) Irving died on January 1, 2008. (*Id.* ¶ 22.) Pursuant to both Marjorie's and Irving's trusts, Galvan was designated successor trustee and currently serves in that capacity under both trusts. (*Id.* ¶¶ 15, 16.)

To date, not all of the assets of Marjorie's and Irving's trusts have been distributed.[1] (*Id.* ¶¶ 24, 32.) Among those assets is a bank account over which the Debtor has control. (*Id.* ¶¶ 26, 34.) In addition, Irving's trust included a business entity he owned called Singles Roofing Company ("Singles"), which was to be allocated to the Debtor. (*Id.* ¶ 35.) Section 4.5 of Irving's trust, however, provides that if Irving transferred the interest in Singles to the Debtor prior to Irving's death, the transfer would be deemed an advancement and the Debtor's share of the trust assets would be reduced by $180,000, the fair market value of the business as of December 31, 2006. (*Id.* ¶¶ 35, 39 & Ex. A.) According to the Debtor, the interest in Singles was transferred to him on March 8, 2007, about ten months before Irving's death. (*Id.* ¶ 38.)

On August 18, 2009, the Debtor filed a complaint in the Circuit Court of the Sixteenth Judicial Circuit in Kane County, Illinois, alleging that Singles had been overvalued and that, pursuant to amended terms of agreement executed by the Debtor and Irving, the sum of $100,600

---

[1] According to Galvan, available assets of $619,363 remain to be distributed to the beneficiaries under both trusts, and the Debtor has an interest in those assets. (Compl. ¶ 56.)

that the Debtor had remitted to Irving was payment in full for the company. (*Id.* ¶¶ 36, 37, 40.)

The complaint sought entry of an order authorizing Galvan, as trustee, to accept the Debtor's

payments, credits, and adjustments as payment in full of his purchase of Singles; instructing

Galvan to prepare a final accounting; and directing him to disburse to the Debtor his share of the

remainder of both Irving's and Marjorie's trusts and Irving's estate. (*Id.* ¶¶ 41-43.) On

September 24, 2009, Galvan filed a counterclaim for interpleader, asking the state court to order

him to pay the proceeds of both trusts to the clerk of the court "to be adjusted, litigated and

settled among the [b]eneficiaries"; to discharge him as trustee; and to enter judgment in his favor

for costs. (*Id.* ¶ 51.) On May 11, 2010, Debra and Donald filed an answer to the Debtor's

complaint, as well as counterclaims alleging that the Debtor did not pay in full for Singles, that

he committed fraud, and that he breached his fiduciary duty with respect to the checking account

over which he had control. (*Id.* ¶¶ 45, 46.) On June 1, 2010, Canulli, the Debtor's former

attorney in the state court lawsuit, filed a notice in that court, claiming an attorney's lien in the

sum of $97,867.58.[2] (*Id.* ¶ 52 & Ex. J.) The state court case has not been resolved and is

currently pending. (*Id.* ¶ 51.)

On June 22, 2010, Galvan, in his capacity as trustee, received a notice of levy from the

Internal Revenue Service (the "IRS") against the Debtor in the amount of $3,414,468.47. (*Id.* ¶

54.) A week later, on June 29, 2010, the Debtor filed a voluntary petition for relief under chapter

7 of the Bankruptcy Code. (*Id.* ¶ 8.)

Subsequently, on July 23, 2010, Galvan filed a two-count complaint in the bankruptcy

---

[2] Prior to that filing, Canulli had claimed a lien in the sum of $86,467.58 for attorney's fees, costs, and expenses as of March 26, 2010. (*Id.* ¶ 52 & Ex. J.)

4

case seeking the same relief he requested in the state court. On August 10, 2010, he filed an

amended complaint that was substantially similar to the original complaint. Under Count I of the

amended complaint, Galvan requests that the court: (1) order the beneficiaries and lien holders

to "interplead and adjust, litigate and settle among themselves their respective demands" as to

how the proceeds of the trusts should be distributed; (2) order Galvan to pay the proceeds of the

trusts into the registry of the bankruptcy court; (3) discharge Galvan "as [t]rustee and from

further liability"; and (4) enter judgment for Galvan for costs and fees against the beneficiaries

and lien holders. (Compl. at 13.) Under Count II, Galvan asks the court to grant him leave to

submit a final accounting for both Irving's and Marjorie's trust estates, to approve those final

accountings once submitted, and to discharge Galvan as trustee. (*Id.* at 14.)

On June 7, 2011, Canulli filed the instant motion to dismiss. According to the motion,

dismissal pursuant to Rule 12(b)(1) is sought in the first instance because the court lacks subject

matter jurisdiction over the proceeding. Alternatively, Canulli contends that, should the court

find that it does have subject matter jurisdiction, abstention is mandatory pursuant to 28 U.S.C. §

1334(c).


## II. DISCUSSION

A Rule 12(b)(1) motion requires dismissal of claims over which the court lacks subject

matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be

conferred on a court before that court can hear a case or controversy. *Equip. Acquisition Res.,*

*Inc. v. United States (In re Equip. Acquisition Res., Inc.)*, 451 B.R. 454, 458 (Bankr. N.D. Ill.

2011) (internal quotation omitted); *In re Dental Profile, Inc.*, No. 09 C 6160, 2010 WL 431590,

5

at *1 (N.D. Ill. Feb. 1, 2010) (*quoting In re Chi., Rock Island & Pac. R.R. Co.*, 794 F.2d 1182,

1188 (7th Cir. 1986)); *see also State of Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998)

(noting that subject matter jurisdiction is "the first question in every case"). A plaintiff faced

with a Rule 12(b)(1) motion bears the burden of demonstrating that the jurisdictional

requirements have been met. *Equip. Acquisition Res.*, 451 B.R. at 459; *Dental Profile*, 2010 WL

431590, at *1 (*citing Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987) (finding

that when a defendant moves for dismissal under 12(b)(1), the plaintiff bears the burden of

establishing that the court has subject matter jurisdiction)).

Section 1334(b) of title 28 of the United States Code is the statutory source of bankruptcy

jurisdiction and, thus, the starting point for the court to determine whether jurisdiction exists.

*Zerand-Bernal Grp., Inc. v. Cox (In re Cary Metal Prods., Inc.)*, 152 B.R. 927, 930 (Bankr. N.D.

Ill. 1993), *order aff'd*, 158 B.R. 459 (N.D. Ill. 1993), *aff'd*, 23 F.3d 159 (7th Cir. 1994). Section

1334 provides that "the district courts shall have original but not exclusive jurisdiction of all civil

proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §

1334(b). The district court's authority may be delegated to bankruptcy judges pursuant to 28

U.S.C. § 157(a). *Piccione, Keeley & Assocs., Ltd. v. Schoppe (In re RML Capital Inv., LLC)*,

Nos. 09 B 04609, 09 A 00666, 2010 WL 1840249, at *2 (Bankr. N.D. Ill. May 10, 2010);

*Mulder*, 307 B.R. at 644. The District Court for the Northern District of Illinois has referred all

bankruptcy cases under its jurisdiction to its bankruptcy judges pursuant to Internal Operating

Procedure 15(a). *RML Capital Inv.*, 2010 WL 1840249, at *2. Accordingly, this court has

jurisdiction over matters arising under title 11, as well as those arising in or related to cases under

title 11.

6

Jurisdiction over matters "arising under" the Code or "arising in" a bankruptcy case is

limited to issues that arise during the bankruptcy case and concern the administration of the

bankruptcy estate, such as whether to discharge the debtor. *Zerand-Bernal*, 23 F.3d at 162.

These matters are termed "core proceedings" and, for the most part, are enumerated in 28 U.S.C.

§ 157(b)(2). *Stern v. Marshall*, 131 S. Ct. 2594, 2603-04 (2011); *Barnett v. Stern*, 909 F.2d 973,

979 (7th Cir. 1990). "Arising under" jurisdiction encompasses causes of action created or

decided by a statutory provision of title 11. *Id.* at 981. "Arising in" jurisdiction, in turn, involves

matters that arise only in the context of bankruptcy cases–those that do not and cannot exist

outside of bankruptcy. *RML Capital Inv.*, 2010 WL 1840249, at *2 (*citing Diamond Mortg.

Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990)).

In contrast, a "related to" proceeding is not considered "core" because it does not invoke

a substantive right created by the Code and can exist outside of bankruptcy. *Barnett*, 909 F.2d at

981. Bankruptcy judges may hear proceedings that are non-core but "otherwise related to a case

under title 11." 28 U.S.C. § 157(c)(1). In such proceedings, however, bankruptcy judges do not

have the authority to enter final orders or judgments; rather, they must submit proposed findings

of fact and conclusions of law to the district court. *Id.*; *Stern*, 131 S. Ct. at 2604. The United

States Supreme Court has explained that "related to" proceedings include: "(1) causes of action

owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2)

suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v.

Edwards*, 514 U.S. 300, 307 n.5 (1995). The Supreme Court observed in *Celotex* that "Congress

did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of

some breadth." *Id.* at 307-08.

The Seventh Circuit Court of Appeals interprets "related to" jurisdiction more narrowly than other circuits, however, in order "to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts." *In re Fedpak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996). In the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits, a proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp.*, 514 U.S. at 307-08 & n.6 (internal quotation omitted). In contrast, a proceeding in the Seventh Circuit is within "related to" bankruptcy jurisdiction if its resolution affects either the amount of assets available for distribution or the allocation of assets among creditors. *Fedpack Sys.*, 80 F.3d at 213-14; *Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987).

### A.   Count I: Interpleader

Count I of the amended complaint contends that as a result of the competing claims of the Debtor and his siblings, the liens filed by Canulli and the IRS against the Debtor, and the filing of the chapter 7 bankruptcy petition, Galvan is "unable to satisfy the demands of any beneficiary or lien holder without exposing himself to liability or litigation or both . . . ." (Compl. ¶ 59.) Accordingly, pursuant to 28 U.S.C. § 1335, Galvan seeks to deposit the remainder of the proceeds of Irving's and Marjorie's trusts into the registry of this court, moving them apparently from the state court registry, and requests that the trust beneficiaries and lien holders be ordered to interplead as to each other. Galvan also asks that he be discharged as trustee and awarded costs resulting from these proceedings.

Section 1335, the interpleader statute, was enacted to protect stakeholders who make no

8

claim to money in their possession and who want to be relieved of liability, where diverse parties

are making adverse claims to that money. *Ry. Express Agency, Inc. v. Jones*, 106 F.2d 341, 344

(7th Cir. 1939). Interpleader is an equitable procedure which is justified only when stakeholders

have "a real and reasonable fear" of conflicting claims or double liability. *Aaron v. Mahl*, 550

F.3d 659, 663 (7th Cir. 2008).

   As an interpleader claim brought pursuant to federal statute, the claim in Count I of

Galvan's amended complaint arises neither under title 11, nor in a case under title 11. The claim

does not arise under title 11 because it is not a claim "created or determined by a statutory

provision" of that title. *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 719 (7th

Cir. 2010) (internal quotation omitted); *see also Globaleyes Telecomms., Inc. v. Verizon N., Inc.*,

425 B.R. 481, 496 (S.D. Ill. 2010). Rather, although the ability to interplead is premised on a

federal statute, the underlying claim is based on state law and concerns solely the administration

of Irving's and Marjorie's trusts and Irving's estate. For the same reason, the claim does not

arise in a case under title 11 because it does not concern "administrative matters that arise *only* in

bankruptcy cases." *Nelson*, 825 F.2d at 719 (emphasis in original). In fact, a nearly identical

claim was filed by Galvan in state court. The issue, then, is whether the claim in Count I is at

least "related to" the bankruptcy case.

   To the extent that Galvan's claim in Count I seeks an adjudication of the Debtor's rights

to assets in Irving's and Marjorie's trusts and in Irving's estate, that claim would typically fall

within the court's "related to" bankruptcy jurisdiction. That is because the court's determination

as to what constitutes property of the estate and the validity, extent, and priorities of the claims

against the property of the estate affects both the amount of assets available for distribution and

the allocation of those assets among creditors. This type of claim, however, typically must involve the chapter 7 trustee as a party. *See, e.g., Korhumel, Inc. v. Korhumel Indus., Inc. (In re Korhumel Indus., Inc.)*, 103 B.R. 917 925 (N.D. Ill. 1989). Here, the bankruptcy trustee of the Debtor's estate has not been named as a party.

Under fundamental bankruptcy law, the filing of a chapter 7 petition commences the bankruptcy case, which, in turn, creates a bankruptcy estate composed of "all legal or equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held." 11 U.S.C. § 541; *see also McCoy v. Johnson (In re McCoy)*, No. 02 C 3258, 2002 WL 1611588, at *3 (N.D. Ill. July 22, 2002); *Maxwell v. Barounis (In re Swiontek)*, 376 B.R. 851, 864 (Bankr. N.D. Ill. 2007). Upon the filing of the petition, the debtor must surrender all property of the estate, 11 U.S.C. § 521(a)(4), and that property and all rights to it are vested in the trustee, *In re Salzer*, 52 F.3d 708, 711 (7th Cir. 1995); *In re Vongchanh*, No. 09 B 70050, 2009 WL 1852452, at *2 (Bankr. N.D. Ill. June 29, 2009); *Swiontek*, 376 B.R. at 864 ("To the extent that a debtor does not claim an exemption in his property, the bankruptcy trustee has control over all property of the estate."). As the "representative of the estate," the trustee has the capacity to sue or be sued. 11 U.S.C. § 323. He is accountable for all property of the estate, *Salzer*, 52 F.3d at 712, and is charged with collecting and preserving that property, 11 U.S.C. § 704(a); *Salzer*, 52 F.3d at 712; *In re Stewart*, 452 B.R. 726, 743 (C.D. Ill. 2011).

Because the title and right to possession of all property owned and possessed by the Debtor vested in the bankruptcy trustee as of the date of the filing of the chapter 7 petition, that trustee, N. Neville Reid, is a required party to this proceeding; *See, e.g., Korhumel Indus.*, 103 B.R. at 925. Accordingly, he must be joined in this action pursuant to Federal Rule of Civil

Procedure 19, made applicable by Federal Rule of Bankruptcy Procedure 7019.[3]

Rule 19(a) governs "required parties"–those who must be joined in an action if they are subject to service of process and their joinder will not deprive the court of subject matter jurisdiction. Fed. R. Civ. P. 19(a)(1); *see also Forty-Eight Insulations, Inc. v. Aetna Cas. & Sur. Co. (In re Forty-Eight Insulations, Inc.)*, 109 B.R. 315, 317 (N.D. Ill. 1989). Under Rule 19, a party is "required" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

---

[3] Galvan contends that Canulli waived the argument that the failure to name the trustee as a required party deprives the court of jurisdiction, because Canulli raised the argument for the first time in his reply brief. Galvan is mistaken. Although it is well settled that an argument raised for the first time in a reply is waived, *e.g., Gonzalez v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009); *Fogel v. Linnemann (In re Mission Bay Ski & Bike, Inc.)*, Nos. 07 B 20870, 08 A 55, 2009 WL 2913438, at *8 (Bankr. N.D. Ill. Sept. 9, 2009) (*citing Gonzalez*), Canulli suggests in his original motion that the bankruptcy trustee is a required party to this proceeding. *See* Mot. to Dismiss at 10-11 (noting that "[o]bviously, the bankruptcy trustee now owns . . . any claim of [the Debtor] to share in the proceeds of the trusts and [the] decedents' estates" and stating that "[t]he case filed by [Galvan] is not . . . a claim against the [bankruptcy] estate"). Moreover, even if the argument had been raised for the first time in Canulli's reply, Galvan had an opportunity to respond in his surreply. *See, e.g., Boyer v. Canterbury Sch., Inc.*, No. 1:04-CV-367-TS, 2005 WL 2370232, at *3 (N.D. Ind. Sept. 27, 2005); *Green v. Peters*, No. 71 C 1403, 2000 WL 1230246, at *6 (N.D. Ill. Aug. 24, 2000); *see also EEOC v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1260 (D. Colo. 2007) ("When a party puts forth new arguments in a reply brief, a court may avoid error by . . . permitting the nonmoving party to file a surreply"). Thus, the court addresses the matter on its merits.

obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A) & (B).

In the instant matter, the trustee is a required party to this action. He clearly possesses an interest in the Debtor's bankruptcy estate, and any disposition in his absence would impair his ability to protect that interest. Although the Debtor has been included as a named defendant, the trustee must still be afforded the opportunity to respond on behalf of the estate.

The court notes that where, as here, a required party was not initially joined, Rule 19 expressly provides that the court "must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). While joining the trustee to this action would bring the claim in Count I within the court's "related to" jurisdiction, however, the court would nonetheless be required to abstain from deciding the case pursuant to 28 U.S.C. § 1334(c)(2). That subsection provides as follows:

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). The party seeking abstention has the burden of establishing that abstention is appropriate. *H.J. Rowe, Inc. v. Sea Prods., Inc. (In re Talon Holdings, Inc.)*, 221 B.R. 214, 221 (Bankr. N.D. Ill. 1998). Abstention is mandatory where all of the following criteria are satisfied: (1) the suit is based on a state law cause of action that, although related to a case under title 11, does not arise under title 11 or arise in a case under title 11; (2) there is no separate basis for federal jurisdiction apart from the bankruptcy; (3) an action has already

12

commenced in the state court; and (4) the case could be timely adjudicated in the state court.
*Cullen Electric Co. v. Bill Cullen Elec. Contracting Co. (In re Bill Cullen Elec. Contracting Co.)*, 160 B.R. 581, 585 (Bankr. N.D. Ill. 1993).

All of the requirements of section 1334(c)(2) are met in the instant case. Looking to the first two criteria under the statute, the claims in both Counts I and II of the cause of action here arise under state law, and, absent bankruptcy, the suit would not fall within the jurisdiction of the federal courts. As to the third factor, a nearly identical action has already commenced in the state court. With respect to the fourth factor, timely adjudication can be weighed "relatively lightly" in an adversary proceeding related to a chapter 7 case. *World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 612 (Bankr. S.D. Cal. 1988). That is because the primary concern in a chapter 7 case is the orderly accumulation and distribution of the estate assets–there is no "administrative urgency or plan of reorganization to facilitate." *Id.* Because there is no evidence that allowing the state court action to proceed will unfavorably affect the pending bankruptcy, *see J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 74 B.R. 651, 655 (N.D. Ill. 1987), this matter can be timely adjudicated in the state court. Accordingly, even if the court were to join the trustee to the instant action, thus giving the court jurisdiction over the proceeding, mandatory abstention would be appropriate.

### B.    Count II:  Approval of Accounting

In Count II of the amended complaint, Galvan contends that he has made various distributions from Irving's and Marjorie's trusts and that he is prepared to submit to the court an accounting detailing the remaining inventory in the trusts, as well as the receipts, the disbursements, and the balances. (Compl. ¶ 68.) Galvan asks the court to grant him leave to

submit a final accounting for both trusts, to approve the final accounting once submitted, and to

discharge him as trustee.

Count II contains only state law claims concerning the administration of the trusts, and

the relief sought by Galvan is governed solely by state law. Thus, the claim in Count II does not

arise under title 11, nor does it arise in or relate to a case under title 11. The claim does not fall

within the court's "arising under" jurisdiction because it does not invoke a substantive right

provided by title 11. Similarly, the claim does not arise in a case under title 11 because not only

*can* it exist without the filing of a bankruptcy petition, but the very same claim was filed in the

state court. Finally, whether the court permits Galvan to submit a final accounting, approves that

accounting, or discharges him as trustee has no bearing on either the amount of assets available

for distribution or the allocation of assets among creditors. Therefore, the claim does not fall

within the court's "related to" jurisdiction either.[4] Accordingly, the claim exceeds the

jurisdiction of the court, and the motion to dismiss is granted as to Count II.

## III. CONCLUSION

For the foregoing reasons, the motion of defendant-lien holder Michael Canulli to dismiss

the first amended complaint of plaintiff Luis Galvan pursuant to Federal Rule of Civil Procedure

---

[4] The parties spend much time and energy arguing over the "probate exception" to federal court jurisdiction. Specifically, Canulli contends that the proceeding at bar is, at bottom, a probate matter and that the bankruptcy court lacks jurisdiction by operation of the probate exception. *See Marshall v. Marshall*, 547 U.S. 293, 311 (2006) (explaining that "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate"). In response, Galvan argues that the exception does not apply to this proceeding because the underlying issues involve trust matters–not the administration of a probate estate. Given the court's analysis above, the applicability of the probate exception need not be addressed.

14

12(b)(1) will be granted as to both Counts I and II, and the adversary proceeding will be dismissed for lack of subject matter jurisdiction.  In the alternative, if the court were to gain jurisdiction by the joinder of the trustee to the action, abstention would be required.  On that basis, then, the adversary proceeding would also be dismissed.

**Dated:**          MAR 15 2012

**ENTERED:**

SUSAN PIERSON SONDERBY
United States Bankruptcy Judge